In the Matter of the Arbitration Between
PREMIER STEAMSHIP CORP.,
Petitioner,

v.

EMBASSY OF ALGERIA, Respondent.

No. 71 Civ. 2674.

United States District Court,
S. D. New York.

Oct. 20, 1971.

———◆———

Nicholas J. Healy, Jr., of Healy & Baillie, New York City, for petitioner.

No appearance for respondent.

PALMIERI, District Judge.

This is a petition pursuant to the United States Arbitration Act, 9 U.S.C. §§ 4 and 5,[1] seeking a court order appointing an arbitrator and directing that arbitration proceed forthwith in the manner provided for in a contract of charterparty.

The facts appear to be the following: Petitioner is a Liberian corporation with an office in New York City. It is owner of the S/S Ariston. Respondent is "an agency of the Algerian government, engaged in the transaction of commercial business therefor, with an office in Washington, D.C." The contract of charterparty in question was entered into on or about August 22, 1966, at Washington, D.C., between the petitioner shipowner and the respondent charterer. The arbitration clause commonly found in such contracts reads as follows:

ARBITRATION CLAUSE NEW YORK:

Should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men.

Disputes arose between the parties and, since December 23, 1970, petitioner has allegedly communicated with respondent repeatedly requesting a statement of the latter's intentions in this matter and informing them of petitioner's intention to arbitrate failing an amicable agreement. No replies have been received by petitioner. On May 26, 1971, petitioner made a demand upon respondent for arbitration and named its arbitrator pursuant to the Arbitration Clause noted above. To date, respondent, failing to name an arbitrator, has maintained its silence; and the alleged disputes remain unsettled.

---

1. 9 U.S.C. § 4 provides in pertinent part: A party aggrieved by the failure . . of another to arbitrate under a written agreement for arbitration may petition any United States district court . . for an order directing that such arbitration proceed in the manner provided for in such agreement . . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 5 provides in pertinent part: . . . if a method [of appointing an arbitrator] be provided and any party thereto shall fail to avail himself of such method, or if . . . there shall be a lapse in the naming of an arbitrator . . . then upon the application of either party to the controversy the court shall designate and appoint an arbitrator . . . who shall act under the said agreement with the same force and effect as if he . . had been specifically named therein.

A recent State Department communication to an attorney in this case[2] reveals the following:

> Algeria severed diplomatic relations with the United States, and closed its Embassy here on June 6, 1967. . . . In addition to the difficulties arising from Algeria's not having an Embassy here, you must also realize that an Embassy and its diplomatic agents are entitled to immunity from United States jurisdiction. Thus, even if the Embassy were open, a court order could not compel it to go to arbitration.

Petitioner alleges that service of the Notice of Hearing herein "was timely made upon Algeria by registered mail, return receipt requested. The Notice was delivered at the Embassy of the Republic of Guinea, Algerian Interests Section, and receipt was acknowledged."

While certain of the questions raised are not novel there remains a basic threshold question which appears to be one of first impression—namely that one of the parties to this controversy, i. e., the respondent Embassy or Government of Algeria, has remained silent throughout. In other words, what is before the Court is in effect an *ex parte* motion on the part of the petitioner.

Section 4 of the United States Arbitration Act provides that

> [t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration. . . .

A literal compliance with the threshold determination required of the Court by this statutory provision is impossible because only one party is before the Court and the crucial facts have not been sufficiently demonstrated. The language of the petition does not place the Court in a position to determine whether the contract is commercial or governmental in nature: "[b]ecause the Court must have a full *'development of the facts'* in order to dispose of the legal issues . . . the papers to be submitted by the parties should be based on specific facts and events succinctly stated and not accompanied by generalized conclusions." Pan American Tankers Corp. v. Republic of Vietnam, 291 F. Supp. 49, 52–53 (S.D.N.Y.1968); see also Petrol Shipping Co. v. Kingdom of Greece, 332 F.2d 370 (2d Cir. 1964), cert. denied, 385 U.S. 931, 87 S.Ct. 291, 17 L.Ed.2d 213 (1965).

In the instant petition no plea of sovereign immunity was entered nor, in fact, has any response been made by respondent to any of petitioner's attempts to effect communication. It is this element of unexplained silence on respondent's part that lends a unique coloration to the instant petition. Under these circumstances I have been unable to "hear the *parties*" or to be "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," as required by section 4 of the Arbitration Act.

However, and in reliance upon the representations made by petitioner herein, I deem respondent to be in default without prejudice and grant petitioner the relief it seeks. Rule 55, F.R. Civ. p.[3]

The letter from the Department of State, referred to above, is not deemed to be a binding "suggestion" which precludes the order sought herein.

2. Letter dated August 11, 1971, from K. E. Malmberg, Assistant Legal Adviser for Administration & Consular Affairs, addressed to Jack A. Greenbaum, Esq. and forwarded to me.

3. Rule 55(c) would afford respondent protection, if it should prove necessary, in that

> [f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

The general proposition that "an Embassy and its diplomatic agents are entitled to immunity from United States jurisdiction" cannot be disputed. The Schooner Exchange v. McFaddon, 7 Cranch 116, 3 L.Ed. 287 (U.S.1812); see, The Jurisdictional Immunity of Foreign Sovereigns, 63 Yale L.J. 1148 (1954). But if in fact, as petitioner herein alleges, respondent was an "agency of the Algerian government, engaged in the transaction of commercial business therefor," there is ample authority for the issuance of an order to compel arbitration. See Trade & Transport, Inc. v. Directorate General of Commerce, Saigon, 310 F. Supp. 463, 464–465 and cases cited (S.D.N.Y.1969); and Note, Is the Current Disposition of the Doctrine of Sovereign Immunity in the United States Appropriate in Light of Prevailing Governmental Policy? 1 Ga.J.Int'l & Comp. 1, 133 (1970). The State Department has itself affirmed the distinction between the recognition of sovereign immunity for a foreign government's acts of state (jure imperii) and the denial of such immunity to a foreign government's private or commercial acts (jure gestionis). 26 Dept. of State Bull. 984 (1952).

 As to petitioner's alleged mode of service by registered mail, *Trade & Transport, supra*, citing the landmark case of Victory Transport Inc. v. Comisaria General, 336 F.2d 354 (2d Cir. 1964), cert. denied, 381 U.S. 934, 85 S. Ct. 1763, 14 L.Ed.2d 698 (1965), noted that "since appellant [h]as consented beforehand to the jurisdiction of the district court, the sole function of process in this case was . . . to notify the appellant that proceedings had commenced.'" 310 F.Supp. at 465. Service upon respondent in *Victory, supra,* was by registered mail and was deemed to be consistent with due process.

Finally, bringing this present matter to arbitration will not preclude respondent from raising any of the defenses it might wish to raise if it wishes to break its silence, and an arbitrator on its behalf will presumably devote his best efforts towards promoting a just result from respondent's point of view. Arbitration may also shed light upon some of the mysteries of this rather unique situation. In any event, should respondent voice meritorious objections to any or all of the arbitration proceedings, its voice may be heard in a federal court of law which is empowered to exercise judicial review of arbitration awards.

For the preceding reasons I appoint Mr. Hammond L. Cederholm, member and director of the Society of Maritime Arbitrators, Inc., as arbitrator on behalf of the defaulting respondent named herein. The above-captioned title may be amended, if petitioner is so advised, so that respondent will be designated as "The Government of Algeria." It is directed that arbitration proceed forthwith in the manner provided for in the contract of charter party. It is so ordered.